FILED

2010 OCT 22 P 3: 15

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1 FRANCIS M. GREGOREK (144785)
gregorek@whafh.com
2 BETSY C. MANIFOLD (182450)
manifold@whafh.com
3 RACHELE R. RICKERT (190634)
rickert@whafh.com
4 PATRICK H. MORAN (270881)
moran@whafh.com
5 WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
6 750 B Street, Suite 2770
7 San Diego, CA 92101
Telephone:    619/239-4599
8 Facsimile:     619/234-4599

E-filing

9
Attorneys for Plaintiffs
10
11 [Additional Counsel Appear on Signature Page]

12
**UNITED STATES DISTRICT COURT**
13
**NORTHERN DISTRICT OF CALIFORNIA**
14

EMC

15 VALERIE GUDAC and RICHARD BEILES,    )    Case No.    CV 10    4793
16 individually and on behalf of all others    )
similarly situated,    )
17    )    **CLASS ACTION COMPLAINT**
18    Plaintiffs,    )
   )
19 vs.    )
   )
20 ZYNGA GAME NETWORK, INC.,    )
   )
21    )
   Defendants.    )    JURY TRIAL DEMANDED
22 _____    )

23

24

25

26

27

28

CLASS ACTION COMPLAINT

1     Plaintiffs Valerie Gudac and Richard Beiles ("Plaintiffs"), on behalf of themselves and all

2  others similarly situated ("Class," as defined below), bring the following class action complaint

3  against defendant Zynga Game Network, Inc. ("Defendant" or "Zynga"), and upon personal

4  knowledge as to their own acts and status, and upon information and belief as to all other matters,

5  allege as follows:

## NATURE OF THE ACTION

7    1.    This action challenges Zynga's surreptitious and undisclosed collection and

8  transmission of Plaintiffs' and other Class members' personally identifiable information –

9  specifically, their personal Facebook IDs – to third party advertisers and web tracking companies.

10  This surreptitious and undisclosed collection and transmission violates Zynga's own privacy policy

11  as well as applicable state and federal laws.

12    2.    Unbeknownst to Plaintiffs and other Class members, Zynga, in direct violation of

13  its own published privacy policy as well as Facebook's privacy policy, harvests personally

14  identifiable information through the application programs ("apps") it enables Facebook members

15  to play while on Facebook's site.

16    3.    Rather than provide mere entertainment, Zynga programs its apps (including the

17  hugely popular "FarmVille™" app, which presently has more than 58 million "monthly active

18  users") in such a manner to enable Zynga to include the app user's Facebook ID in a "referrer"

19  Uniform Resource Locator ("URL") which it then forwards to third parties.

20    4.    The personally identifiable information Zynga harvests and forwards in this manner

21  affects all Facebook users using Zynga's apps. This includes persons who have affirmatively set

22  the Facebook profiles to the strictest privacy settings available. The information Zynga

23  surreptitiously takes and forwards from Plaintiffs and other Class members can readily, yet

24  illegally, be linked and shared with data brokers and advertisers to create comprehensive personal

25  profiles. These profiles are made without consumers' knowledge and consent and go far beyond

26  Zynga's privacy disclosures and assurances.

27    5.    Zynga's conduct does not end there. Through its apps, not only does Zynga harvest

28  the app user's personally identifiable information, it also collects and transmits information about

CLASS ACTION COMPLAINT

1 the app user's friends (taken from the user's Facebook page) to third party outside companies.

2     6.    Plaintiffs and the other members of the Class have sustained injuries in fact arising
3 from Zynga's conduct as alleged herein.

4     7.    Plaintiffs bring this lawsuit against Zynga on behalf of themselves and a nationwide
5 class of all other similarly situated users of Zynga's Facebook applications, alleging violation of
6 the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.*, 18 U.S.C. § 2701 *et seq.*,
7 and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, breach of contract, violation of
8 various state statutes and laws, and for injunctive and declaratory relief.

9 ## JURISDICTION AND VENUE

10     8.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which
11 confers upon the Court original jurisdiction over all civil actions arising under the laws of the
12 United States, and pursuant to 18 U.S.C. §§ 2520 and 2707 and 18 U.S.C. § 1030. This Court has
13 supplemental jurisdiction over Plaintiffs' state statutory claims and common-law claims under 28
14 U.S.C. § 1367.

15     9.    This Court has jurisdiction over Zynga because a substantial portion of the
16 wrongdoing alleged in this Complaint took place in the State of California and because Zynga has
17 its principal place of business in and is authorized to do business in the State of California.

18     10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Zynga resides
19 in this in this District, many of the acts and transactions giving rise to this action occurred in this
20 District and because Zynga is subject to personal jurisdiction in this District.

21 ## PARTIES

*Plaintiffs*

22     11.    Valerie Gudac is a resident of Fort Myers, Florida. During the time period relevant
23 to this action, Ms. Gudac used one or more of Zynga's Facebook applications.

24     12.    Richard Beiles is a resident of Chicago, Illinois. During the time period relevant to
25 this action, Mr. Beiles used one or more of Zynga's Facebook applications.

26 *Defendant*

27     13.    Zynga Game Network, Inc. is a Delaware corporation founded in January 2007 with
28 its principal place of business located at 699 Eighth Street, San Francisco, California. Zynga has

CLASS ACTION COMPLAINT

- 2 -

expanded rapidly both through internal growth and acquisition of other social network game companies. Currently, Zynga has over 1110 employees working in domestic offices in California, Maryland, Massachusetts, and Texas and international offices in India, Japan and China. Zynga claims to have over 360 million "monthly active users" and over 65 million "daily active users" of its products.

## FACTUAL ALLEGATIONS

### Zynga's Facebook Apps

14.     Zynga holds itself out as "the #1 provider of gaming experiences on social networks, connecting you to your friends through word games, casino games, role playing games, and more." *See* "About Zynga" at http://www.facebook.com/FarmVille#!/FarmVille?v=info, last accessed October 19, 2010.

15.     Zynga's applications (known within the industry as "apps") are among the most popular apps on the social networking website Facebook.

16.     Facebook apps are small programs developed specifically to run on a Facebook users' personal Facebook profile page.

17.     A Facebook user must be logged in to Facebook in order to use a Facebook app, including Zynga's Facebook apps.

18.     Zynga's Facebook apps include such titles as FarmVille™, zyngapoker™ (also known as "Texas HoldEm Poker"), FrontierVille™, Café World™ and Mafia Wars™.

19.     As of October 2010, these five Zynga apps were the first, third, fourth, sixth and seventh most popular apps on Facebook when ranked by "Monthly Active Users," according to AppData, a "company dedicated to providing business information and market research to the Facebook platform."

20.     FarmVille™, for example, is Zynga's most popular Facebook app. FarmVille has more than 58 million monthly active users, including more than 30 million daily active users. and more than 24.5 million Facebook application "fans." When a Facebook user becomes a "fan" of an application such as FarmVille™, the user connects with and interacts with the app and its developer/operator, may provide a link to the app, and is able to stay up-to-date with the developer

CLASS ACTION COMPLAINT

- 3 -

1 and app.

2     21.    Zynga's FarmVille™ Facebook app is, in-part, a real-time farm simulation game
3 allowing Facebook members to manage a virtual farm by planting, growing and harvesting virtual
4 crops and trees, as well as raising livestock, all while interacting with other Facebook members.

5     22.    Below is a cropped screenshot of part of the game play elements of Zynga's
6 FarmVille™ Facebook app, showing a user's simulated farm, including decorations acquired
7 through continued game play or purchase from Zynga (e.g., the Eiffel Tower), and with blurred
8 representational images of the user's FarmVille™ friends running across the bottom of the
9 screenshot:

10

11

12

13



14

15

16

17

18

19

20

21

22

23     23.    But Zynga's FarmVille™ Facebook app, like all of Zynga's most popular Facebook
24 apps, is more than just a game.

25     24.    In addition to functioning as a game within the Facebook environment, Zynga's
26 FarmVille™ Facebook app – unbeknownst and undisclosed to users, including Plaintiffs and other
27 Class members – also collects information from Facebook users' Facebook profiles, including
28 personally identifiable information, and transmits or sells that information to third party advertisers

CLASS ACTION COMPLAINT

- 4 -

1 and internet tracking companies.

2     25.     Zynga offers its Facebook apps to Facebook users for no upfront cost and derives

3 significant revenue from displaying advertisements and selling information about its users to

4 numerous third parties.

5 *Zynga's Undisclosed and Improper*
*Transmission of Personally Identifiable Information*

6     26.     Zynga's Facebook apps all work by loading themselves into an "inline frame," or

7 "iframe" on the user's Facebook page. An iframe is essentially one webpage (here, a page running

8 a Zynga application, such as FarmVille™) embedded within another webpage (here, the user's

9 Facebook page).

10     27.     When a user interacts with Zynga's FarmVille™ Facebook app, the user's browser

11 location bar will show "http://apps.facebook.com/onthefarm" but the iframe content is actually

12 controlled by the application developer, which is Zynga. And here, Zynga's webpage, and in the

13 case of FarmVille™, www.farmville.com, allows Zynga to surreptitiously collect personal

14 information without the user ever leaving the FarmVille app.

15     28.     For Zynga's apps, the content loaded into the iframe in the user's Facebook page

16 includes the game itself alongside third party advertisements.

17     29.     In order to determine which advertisements will be displayed with the iframe,

18 Zynga's application surreptitiously and automatically forwards "referrer" information to third

19 party data brokers, advertisers, and others, all of it unbeknownst to users.

20     30.     "Referrer" information, in the case of an application running as an embedded iframe

21 in a user's Facebook page, will include the URL[1] of the page loading the ad.

22     31.     In the case of all of Zynga's Facebook applications, the referrer information that

23 Zynga harvests and sends to third party advertisers and Internet trackers includes, as part of the

24

---

25 [1]    URL stands for "Uniform Resource Locator." A URL is a string of characters used to identify a
"resource" on the Internet. A "resource" is a generic and abstract definition of every thing or entity that
26 can be identified, named, addressed or handled, in any way whatsoever, by the Internet at large or in any
networked information system. The resource at issue here is the address of a specific Facebook user's
27 Facebook profile page.

28

CLASS ACTION COMPLAINT

1  URL, the Facebook user's Facebook ID.

2  *A Facebook ID is Personally Identifiable*
   *Information protected from Unauthorized*
3  *Transmission by Zynga's Own Policies and State and Federal Law*

4      32.    A Facebook ID is a unique number assigned to every Facebook user. Before June

5  2009, when creating an account, Facebook automatically assigned the user an identification

6  number. In June 2009, according to the "The Facebook Blog," the randomly assigned number,

7  "like 'id=592952074," would soon change in the URL to allow users to put in their real names in

8  the URL. According to Facebook,

9          Your new Facebook URL is like your personal destination, or home, on the Web. People
           can enter a Facebook username as a search term on Facebook or a popular search engine
10         like Google, for example, which will make it much easier for people to find friends with
           common names. Your username will have the same privacy setting as your profile name in
11         Search, and you can always edit your search privacy settings here.

12     33.    Facebook requires each user to provide Facebook with their real name, gender, and

13  date of birth in order to register on Facebook. *See* Facebook's Privacy Policy, October 5, 2010

14  revision, available at http://www.facebook.com/policy.php, last accessed October 19, 2010

15  ("When you sign up for Facebook you provide us with your name, email, gender, and birth date...

16  In addition to name and email address, we require you to provide your gender and birth date during

17  the registration process . . . Because your date of birth and gender are required, you cannot delete

18  them.").

19     34.    A Facebook ID or username can be used to look up a person's name even if that

20  person has set all of his or her Facebook information to "private."

21     35.    Facebook specifically prohibits app developers from transferring any data received

22  from Facebook to advertisers, or selling Facebook user data to any party. *See* Facebook's

23  Statement of Rights and Responsibilities, October 4, 2010 revision, available at

24  http://www.facebook.com/terms.php, last accessed October 19, 2010 ("If you are a developer or

25  operator of a Platform Application or website ... You will not directly or indirectly transfer any

26  data you receive from us to (or use such data in connection with) any ad network, ad exchange,

27  data broker, or other advertising related toolset, even if a user consents to that transfer or use...

28  You will not sell user data."); *see also* Mike Vernal, Using Facebook UIDs,

CLASS ACTION COMPLAINT

- 6 -

1    http://developers.facebook.com/blog/post/418 (Oct. 17, 2010; last visited Oct. 20, 2010 ("We take
2    user privacy seriously. . . Our policy is very clear about protecting user data, ensuring that no one
3    can access private user information without explicit user consent. Further, developers cannot
4    disclose user information to ad networks and data brokers. We take strong measures to enforce this
5    policy, including suspending and disabling applications that violate it. Recently, it has come to our
6    attention that several applications built on Facebook Platform were passing the User ID (UID), an
7    identifier that we use within our APIs, in a manner that violated this policy.").

8        36.    Despite having designed its Facebook apps to capture and transmit personally
9    identifiable information to third parties, Zynga affirmatively represents in its privacy policy that it
10   does "not sell or rent your 'Personally Identifiable Information' to and third party" and "does not
11   provide any Personally Identifiable Information to third-party advertising companies." A copy of
12   Zynga's privacy policy is annexed hereto as Exhibit A. This representation is false.

13       37.    Because of the way Zynga designed its apps, Zynga captured, retained, and
14   forwarded personally identifiable information – specifically Class members' Facebook IDs – to
15   third parties each time Plaintiffs and the other members of the Class used Zynga's Facebook apps
16   contrary to and in contravention of the above stated policies and agreements to which plaintiffs
17   were either a party or a third party beneficiary.

18   ## Exposure of Zynga's Privacy Violations

19       38.    Zynga's practice of transmitting personally identifiable information to third parties
20   was revealed by a Wall Street Journal investigation. See, Emily Steel and Geoffrey A. Fowler,
21   Facebook in Privacy Breach, WALL ST. J., Oct. 18, 2010, available at http://online.wsj.com/article/
22   SB10001424052702304772804575558484075236968.html, last accessed October 19, 2010.

23       39.    The investigation found that the apps reviewed by the Journal, including Zynga's
24   five most popular Facebook apps, "were sending Facebook ID numbers to at least 25 advertising
25   and data firms, several of which build profiles of Internet users by tracking their online activities."
26   Id.

27       40.    By systematically collecting and transmitting Plaintiffs' and the other Class
28   members' personally identifiable information to an unknown number of third party advertisers and

CLASS ACTION COMPLAINT

-7-

1  Internet trackers, Zynga has violated its own privacy policy and the rights of Plaintiffs and the
2  other Class members under state and federal law.

3  **CLASS ACTION ALLEGATIONS**

4      41.    Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to
5  the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf
6  of a class defined as all users of Zynga's Facebook applications from the time of Zynga's founding
7  through the present day. ("Class").

8      42.    Excluded from the Class are Defendant and its subsidiaries and affiliates; all
9  persons who make a timely election to be excluded from the Class; governmental entities; and the
10 judges to whom this case is assigned and any immediate family members thereof. Plaintiffs reserve
11 the right to modify or amend this Class definition, as appropriate.

12     43.    Certification of Plaintiffs' claims for classwide treatment is appropriate because
13 Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence as
14 would be used to prove those elements in individual actions alleging the same claims.

15     44.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the
16 Class are so numerous that individual joinder of all Class members is impracticable. Plaintiffs are
17 informed and believe that there are potentially millions of individual users of Zynga's Facebook
18 apps. The precise number of Class members and their addresses is unknown to Plaintiffs; but may
19 be ascertained from Zynga's books and records. Class members may be notified of the pendency
20 of this action by recognized, Court-approved notice dissemination methods, which may include
21 U.S. mail, electronic mail, Internet postings, and/or published notice.

22     45.    **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2)**
23 **and 23(b)(3).** This action involves common questions of law and fact, which predominate over
24 any questions affecting individual Class members. Personally Identifiable Information from all
25 Class members was taken by Zynga and transmitted to third parties in violation of Zynga's own
26 privacy policy and state and federal law. Furthermore, common questions of law and fact, include,
27 without limitation:

28             a.   whether Zynga engaged in the conduct as alleged herein;

CLASS ACTION COMPLAINT

b. whether Zynga's practices violate Zynga's privacy policy;

c. whether Zynga's practices violate applicable law;

d. whether Plaintiffs and the other members of the Class are entitled to actual, statutory, or other forms of damages, and other monetary relief and, if so, in what amount(s); and

e. whether Plaintiffs and the other members of the Class are entitled to equitable relief, including but not limited to injunctive relief and restitution.

46.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other members of the Class because, among other things, all Class members were comparably injured through the uniform misconduct described above and were subject to Zynga's unwarranted and unauthorized violations of their personal privacy.

47.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; they have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

48.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Zynga has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Class as a whole.

49.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Zynga, so it would be impracticable for Class members to individually seek

CLASS ACTION COMPLAINT

- 9 -

1  redress for Zynga's wrongful conduct. Even if the Class members could afford individual
2  litigation, the court system could not. Individualized litigation creates a potential for inconsistent
3  or contradictory judgments, and increases the delay and expense to all parties and the court system.
4  By contrast, the class action device presents far fewer management difficulties, and provides the
5  benefits of single adjudication, economy of scale, and comprehensive supervision by a single
6  court.

## CLAIMS FOR RELIEF

## COUNT I

### Violation of the Electronic Communications Privacy Act – Stored Communications Act, 18 U.S.C. § 2701, *et seq.*

50. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as
though fully stated herein.

51. Defendant Zynga and third-party Facebook provide an electronic communication
service to the public within the meaning of 18 U.S.C. § 2510(15).

52. The transmission of Plaintiffs' and the other Class members' unique Facebook IDs
are electronic communications within the meaning of 18 U.S.C. § 2510(12).

53. Defendant Zynga captures and stores Plaintiffs' and the other Class members'
unique Facebook IDs in electronic storage within the meaning of 18 U.S.C. § 2510(17).

54. Each instance of Defendant's wrongful course of conduct, as set forth above,
constitutes a violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2701, *et seq.*, in
that Defendant, by its alleged conduct, intentionally accessed without authorization and/or
intentionally exceeded its authorization to access computer systems through which electronic
communication systems are provided, and obtained access to Plaintiffs' and the other Class
members' electronic communications while in electronic storage and/or knowingly divulged the
contents of such communications while in electronic storage, all without or exceeding the
knowledge, authorization, or consent of Plaintiffs and the other members of the Class.

55. Pursuant to 18 U.S.C. §2707, Plaintiffs and the other members of the Class are
entitled to such preliminary or other equitable or declaratory relief as may be appropriate,

CLASS ACTION COMPLAINT

- 10 -

1  including statutory damages, actual and punitive damages, costs and reasonable attorneys' fees,

2  plus disgorgement of any profits defendant earned as a result of such violations of law.

## COUNT II

### Violation of the Electronic Communications Privacy Act – Interception of Electronic Communications, 18 U.S.C. § 2510, *et seq.*

56.  Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

57.  The transmissions of Plaintiffs' and the other Class members' unique Facebook IDs are electronic communications within the meaning of 18 U.S.C. § 2510(12).

58.  Defendant Zynga, either directly or by aiding, abetting and/or conspiring to do so, has intentionally intercepted, endeavored to intercept, and/or procured through third parties Plaintiffs' and the other Class members' electronic communications in violation of 18 U.S.C. § 2510 *et seq.*, without Plaintiffs' or the other Class members' knowledge, authorization, or consent.

59.  Defendant Zynga, either directly or by aiding, abetting and/or conspiring to do so, has intentionally used, endeavored to use, and/or procured another to use Plaintiffs' and the other Class members' electronic communications in violation of 18 U.S.C. § 2510, *et seq.*, without Plaintiffs' or the other Class members' knowledge, authorization, or consent.

60.  Defendant Zynga, either directly or by aiding, abetting and/or conspiring to do so, has intentionally disclosed or endeavored to disclose Plaintiffs' and the other Class members' electronic communications in violation of 18 U.S.C. § 2510, *et seq.*, without Plaintiffs' or the other Class members' knowledge, authorization, or consent.

61.  Pursuant to 18 U.S.C. § 2520, Plaintiffs and each other Class member are entitled to preliminary, equitable, and declaratory relief, as may be appropriate, statutory damages for each violation, actual and punitive damages, reasonable attorneys' fees and costs, plus any profits made by defendant as a result of such violations of law.

## COUNT III

### Violation of the Computer Fraud and Abuse Act – 18 U.S.C. § 1030, *et seq.*

62.  Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

CLASS ACTION COMPLAINT

- 11 -

63. Defendant Zynga intentionally accessed a computer without authorization and/or exceeded any authorized access and in so doing intentionally breached it's published privacy policy.

64. Defendant Zynga illegally obtained this information from a protected computer involved in interstate or foreign communication.

65. By accessing without authorization and/or exceeding any authorized access to a protected computer the Defendant obtained information from the computer it was not authorized to obtain.

66. By engaging in the wrongful conduct described herein, Defendant Zynga caused Plaintiffs to suffer damage or loss by misappropriating and disclosing to others Plaintiffs' personally identifiable information.

67. Defendant Zynga caused damage or loss during a one-year period aggregating in excess of $5,000.

68. Pursuant to 18 U.S.C. § 1030(g), Plaintiffs and each Class member are entitled to preliminary, equitable, and declaratory relief, as may be appropriate, compensatory damages, reasonable attorneys' fees and costs, and any other relief the Court deems appropriate as a result of such violations of law.

## COUNT IV

### Violation of Right of Privacy

69. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

70. Defendant improperly invaded the common law, constitutional, and statutory privacy rights of Plaintiffs and the other members of the Class. These violations include repeatedly accessing private communications on Facebook and extracting Facebook ID data without such persons' express consent and/or at the expense of Plaintiffs and the other members of the Class.

71. As a result of the above violations of Plaintiffs' and the other Class members' rights of privacy, Defendant is liable to Plaintiffs and the other members of the Class for declaratory judgment, damages, and attorneys' fees and costs.

CLASS ACTION COMPLAINT

- 12 -

1

2

## COUNT V

### Breach of Contract

3        72.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as

4   though fully stated herein.

5        73.    The products and services Defendant Zynga offered to Plaintiffs and the other

6   members of the Class, including its Facebook apps, are governed by a written privacy policy

7   contract. A copy of Zynga's privacy policy is annexed hereto as Exhibit A.

8        74.    In its privacy policy, Zynga represents that it does "not sell or rent your 'Personally

9   Identifiable Information' to any third party" and "does not provide any Personally Identifiable

10  Information to third-party advertising companies."

11       75.    By reason of the conduct described above, Defendant Zynga has uniformly

12  breached its contract with Plaintiffs and each of the other Class members by disclosing their

13  personally identifiable information to third parties in breach of the terms of its privacy policy,

14  failing to act in good faith, and by such other actions now unknown but to be proven at trial.

15       76.    As a direct and proximate result of the aforementioned wrongful conduct and

16  breach committed by Defendant Zynga, Plaintiffs and the other members of the Class have

17  suffered and will continue to suffer damages and losses in an amount to be proven at trial.

## COUNT VI

18

### Breach of the Covenant of Good Faith and Fair Dealing

19

20       77.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as

    though fully stated herein.

21

22       78.    Under California law, a covenant of good faith and fair dealing is implied into every

    consumer contract.

23

24       79.    To the extent there is found to be a contractual relationship between the parties,

25  either as a result of a direct relationship or through a third party beneficiary relationship,

26  Defendant violated this covenant of good faith and fair dealing in the applicable agreements by

27  gathering valuable Facebook IDs and profiting from the use of that data without providing any

    compensation or consideration for such data to plaintiffs and member of the class.

28

CLASS ACTION COMPLAINT

## COUNT VII

### Conversion

80. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

81. Plaintiffs and the other members of the Class own and have the right to possess as property the data they provide and that is created about them on Facebook, particularly their unique Facebook ID information.

82. Defendant interfered with, and continues to interfere with, possession of this unique data owned by Plaintiffs and the other members of the Class by failing and refusing to return or destroy the data or pay compensation therefore as a result of its use for its own profit.

83. Plaintiffs and the other members of the Class never affirmatively consented to Defendant's conduct of retaining such data and converting the data into monies.

84. Plaintiffs and the other members of the Class have been, and will continue to be, damaged by Defendant's wrongful retention of funds in an amount that is capable of identification through Defendant's records.

85. Plaintiffs are entitled to exemplary damages because Defendant has engaged in fraud, malice, or oppression in connection with such acts of conversion.

## COUNT VIII

### Common Counts, Unjust Enrichment, Assumpsit and Declaratory Relief

86. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

87. Defendant Zynga became indebted to Plaintiffs and the other members of the Class for money had and received by Defendant Zynga and monies paid to Defendant or its agents at Defendant's insistence and request, by which it has benefitted from its unlawful conduct of obtaining and using valuable Facebook ID information without first obtaining the class members' authorization or consent. Defendant appreciated the benefit of the receipt of such excessive revenues and profits. Defendant has received this excessive revenue as a direct result of using data obtained from Plaintiffs and other members of the Class.

CLASS ACTION COMPLAINT

- 14 -

1    88.    As a result of its conduct, Defendant has been unjustly enriched at the expense of
2   Plaintiffs and other members of the Class. Under the circumstances, it would be against equity and
3   good conscience to permit Defendant to retain the ill-gotten benefits that it received in light of its
4   material violations of law detailed throughout this Complaint.

5    89.    By virtue of equitable principles in quasi-contract and assumpsit, and under
6   California law, Plaintiffs and other members of the Class are entitled to payment of such monies
7   and the establishment of a constructive trust consisting of the benefit conferred upon or obtained
8   by Defendants as a result of the acquisition and use of such data. The Court should also issue
9   declaratory relief to declare the rights and responsibilities of the parties pursuant to the provisions
10   of Cal. Code of Civil Procedure §1060.

11                                          **COUNT IX**

12                          **Violation of Cal. Penal Code Section 532**

13    90.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as
14   though fully stated herein

15    91.    As a result of wrongs committed herein as detailed above, Defendant has knowingly
16   and without permission caused to be accessed the personal information of plaintiffs and the Class,
17   within the meaning of Cal. Penal Code Section 532.

18    92.    Based on this violation, Plaintiffs and each of the other members of the Class are
19   entitled to damages, injunctive relief, and an award of attorneys' fees and costs, all as permitted
20   under that statute.

                                            **COUNT X**

21   **Violation of the Unlawful, Unfair and Fraudulent Business Acts and Practices Act**
22   **California Business and Professions Code §17200, et seq.**

23    93.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as
24   though fully stated herein.

25    94.    The acts, omissions, misrepresentations, practices and non-disclosures of Defendant
26   as alleged herein constitute unlawful, unfair and fraudulent business acts and practices within the
27   meaning of California Business & Professions Code §17200, *et seq*.

28

CLASS ACTION COMPLAINT

- 15 -

95.     Defendant has engaged in "unlawful" business acts and practices by violating California Penal Code Sections 532 *et seq.*, California's invasion of privacy laws and protections provided under this State's common, constitutional and statutory law, engaging in acts of conversion and violating the other laws detailed above.

96.     In addition, under Civil Code Sections 1798.83-1798.84, consumers must be permitted to learn how their personal information is shared by companies for marketing. Businesses such as defendants must provide either: 1) a list of the categories of personal information disclosed to other companies for their marketing purposes during the preceding calendar year, with the names and addresses of those companies, or 2) a privacy statement giving the customer a cost-free opportunity to opt-out of such information sharing. Defendant has failed to advise Plaintiffs and the other members of the Class how much and what types of personal information Defendant has gathered and shared, provided them a list of the categories of personal information acquired and disclosed, or provided a clear, conspicuous, and unambiguous privacy statement that details what information Defendant collects and how to opt out of that practice.

97.     Defendant has also engaged in a "fraudulent" business act or practice in that the omissions of material fact described above have a tendency and likelihood to deceive or mislead Plaintiffs and the other members of the Class.

98.     Defendant has also engaged in an "unfair" business act or practice in that any justification for engaging in the conduct described above is outweighed by the gravity of the resulting harm, particularly considering the available alternatives, and offends public policy, is immoral, unscrupulous, unethical and offensive, or causes substantial injury to consumers, including Plaintiffs and the other members of the Class.

99.     Defendant needs only to have violated one of the provisions set forth in this cause of action to be strictly liable therefor.

100.    Defendant's above-described unlawful, fraudulent, or unfair business acts and practices continue through the present day and present a threat to the general public in that Defendant has failed to publicly acknowledge the wrongfulness of its actions, stop the practices complained of, and provide full equitable injunctive and monetary relief as required by the statute.

CLASS ACTION COMPLAINT

- 16 -

101. Plaintiffs suffered an injury in fact and a loss of money or property as a result of Defendant engaging in such acts of unfair competition. Defendant retained monies it was not permitted to retain and by law and is required to pay to Plaintiffs and the other members of the Class as a result of Defendant using and profiting by Plaintiffs' and the other Class members' property, and specifically their Facebook user IDs in which they have a unique property interest.

102. Pursuant to California Business & Professions Code section 17203, Plaintiffs request an Order of this Court requiring Defendant to immediately cease such acts of unfair competition and enjoining Defendant from continuing to conduct business via the unlawful, fraudulent, or unfair business acts and practices set forth in this Complaint.

103. Plaintiffs additionally request an order from the Court requiring that Defendant provide equitable relief so as to prevent Defendant from benefitting from practices that constitute acts of unfair competition or the use or employment of any monies resulting from such practices, including to the fullest extent permitted by law, requiring the payment of monies as may be necessary to restore to any person any money or property which may have been acquired or retained by means of such acts of unfair competition and/or to ensure such funds are properly disgorged from Defendant and paid over in restitution to the Class. Plaintiffs also request that the Court impose a constructive trust over such monies, to the fullest extent permitted by law. Plaintiffs also request an award of attorneys' fees and costs pursuant to Cal. Code of Civil Procedure section 1021.5 and the private Attorney General, substantial benefit and common fund doctrines.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class proposed in this Complaint, respectfully request:

A. the Court certify the Class pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), and adjudge Plaintiffs to be adequate representatives thereof;

B. the Court enter an Order requiring Defendant to pay Plaintiffs' and the other Class members' actual damages (including multiple damages) or statutory damages, whichever is greater;

CLASS ACTION COMPLAINT

- 17 -

1      C.    the Court enter an Order awarding restitution and disgorgement of Defendants'

2 revenues arising from its conduct alleged above, to Plaintiffs and the other members of the

3 proposed Class;

4      D.    the Court enter an Order awarding declaratory and injunctive relief as permitted by

5 law or equity, including: enjoining Defendant from continuing the unlawful practices set forth

6 above; directing Defendant to modify its Facebook applications so that it no longer collects and

7 transmits users' personally identifiable information to third parties, and to disgorge all monies

8 Defendant acquired by means of any act or practice declared by this Court to be wrongful;

9      E.    the Court enter an Order awarding Plaintiffs and the other members of the Class

10 their expenses and costs of suit, including reasonable attorneys' fees, to the extent provided by

11 law; and

12      F.    for such other and further relief as may be just and proper.

13 **JURY DEMAND**

14      Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all

15 claims in this Complaint so triable.

16 DATED: October 22, 2010           WOLF HALDENSTEIN ADLER
                          FREEMAN & HERZ LLP

17                          FRANCIS M. GREGOREK
                          BETSY C. MANIFOLD

18                          RACHELE R. RICKERT
                          PATRICK H. MORAN

19

20                          FRANCIS M. GREGOREK

21

22                          750 B Street, Suite 2770
                          San Diego, California 92101

23                          Telephone: 619/239-4599
                          Facsimile: 619/234-4599

24                          gregorek@whafh.com
                          manifold@whafh.com

25                          rickert@whafh.com
                          moran@whafh.com

26

27

28

CLASS ACTION COMPLAINT

- 18 -

WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLC
ADAM J. LEVITT
EDMUND S. ARONOWITZ
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603
Telephone: 312/984-0000
Facsimile: 312/984-0001
levitt@whafh.com
aronowitz@whafh.com

DOYLE LOWTHER LLP
WILLIAM J. DOYLE II
JOHN A. LOWTHER
9466 Black Mountain Road, Suite 210
San Diego, California 92126
Telephone: 619/573-1700
Facsimile: 619/573-1701
bill@doylelowther.com
john@doylelowther.com

THE CONSUMER LAW GROUP
ALAN M. MANSFIELD
9466 Black Mountain Road, Suite 225
San Diego, California 92126
Telephone: 619/308-5034
Facsimile: 888/341-5048
alan@clgca.com

Counsel for Plaintiffs

ZYNGA:(16935 V5)17861.CPT

CLASS ACTION COMPLAINT

- 19 -

# EXHIBIT A



CONNECTING THE WORLD THROUGH GAMES

**games     forums     support     jobs     about**



Home | Privacy Policy

## Privacy Policy

## Privacy Policy

Effective Date: January 7, 2009
(Last Updated March 16, 2010)

Welcome to Zynga, a personal online service operated by Zynga Game Network Inc. ("Zynga") which consists of, among other things, software that you have downloaded or are about to download, any software that you have embedded on a web site or are about to embed ("Zynga Games"), any applications created by Zynga and available through social networking sites ("SNS Apps"), any software running on Zynga's servers, ("Zynga Software"), content, related documentation, information on the Zynga domain, and information made available by users to each other through the Zynga Software (collectively, the "Service"). Your privacy is important to us and, as described in this Privacy Policy, we have designed the Service to protect information about you from unauthorized disclosure to others. This Privacy Policy explains how we collect, use and, in certain circumstances, share your personally identifying information. Please read this Privacy Policy carefully, and if you have any questions, feel free to contact us.

By using the Service, you consent to the collection and use of your personal information as outlined in this Privacy Policy, as such policy may be amended from time to time. We may update the Privacy Policy and if we do, we will post a notice that changes have been made on the website www.zynga.com. You should visit this page periodically to review any changes to the Privacy Policy.

### What We Collect

Zynga gives you a number of options regarding what information you will give us:

When you register a profile with Zynga, your profile including any information (name, address, gender) will be registered with Zynga. When you identify yourself on a Zynga site, you may identify yourself using a Zynga account. When you identify yourself on a Zynga site, you may identify yourself through a social network account in which Zynga may receive additional information about your profile.

In each case, we will collect and record the information you have provided. Other than names and email addresses provided at your discretion, we don't generally collect any "Personally Identifying Information" about our users (such as social security number, telephone number, street address, drivers license number, etc.), exception being for billing and payments where we store your billing information such as name, street address, phone number. We may offer you the opportunity to submit other information about yourself (such as gender, age, occupation, hobbies, interests, zip code, etc.), or we may be able to collect that information from social networking systems on which you have used Zynga Games or SNS Apps (in accordance with the terms of use of those systems), which would then also be covered by this Privacy Policy.

In addition to information about yourself, you may choose to share information about yourself in other content ("Content"), such as in games. Any action you perform with other players are considered public, and at your own discretion.

When you use an SNS App on your social network page or use an SNS App on someone else's page, we may record information regarding the use of that SNS App, and we may collect other information that is visible on your social network page in accordance with the relevant terms of use associated with that page.

Note that since most Zynga Software is served through SNS Apps, it is your responsibility to read and accept their Terms of Use, as well as Privacy Policy prior to continuing.

When you invite new members into your network or send messages through the Service, we collect and maintain on secure servers the information associated with those messages, including email addresses and content.

We may use information about you that we collect from other sources, including but not limited to newspapers and Internet sources such as blogs, instant messaging services, Zynga games and other users of Zynga, to supplement your profile.

Zynga may contain links to other websites. We are of course not responsible for the privacy practices of other web sites. We encourage our users to be aware when they leave our site to read the privacy statements of each and every web site that collects personally identifiable information. This Privacy Policy applies solely to information collected by Zynga.

You should also be aware that most content delivered through Zynga games originates with another content provider. Such other content providers may place "cookies" on your browser, or otherwise gather information about you, including by asking you to provide information through the site itself.

Finally, in order to provide the best possible service and to allow us to make certain internal reports and make recommendations, we collect aggregate information about the use of the Service, including information about users accessing the Zynga site or playing Zynga games or using SNS Apps on other sites, such as internet protocol addresses, browser type, browser language, referring / exit pages and URLs, other browser history, platform type, number of clicks, domain names, landing pages, pages viewed and the order of those pages, the amount of time spent on particular pages, and the date and time ("Activity Information").

By using the Service, you consent to our retaining all the above-described information in anonymous form as long as Zynga sees fit.

### Children Under The Age Of 13

Zynga does not knowingly collect or solicit personal information from anyone under the age of 13 or knowingly allow such persons to register. If you are under 13, please do not attempt to register for Zynga or send any information about yourself to us, including your name, address, telephone number, or email address. No one under age 13 may provide any personal

information to or on Zynga. In the event that we learn that we have collected personal information from a child under age 13 we will delete that information as quickly as possible. If you believe that we might have any information from or about a child under 13, please contact us at privacy@zynga.com .

## Children Between The Ages of 13 and 18

We recommend that minors over the age of 13 ask their parents for permission before sending any information about themselves to anyone over the Internet.

## How We Use Your Information

We do not sell or rent your "Personally Identifiable Information" to any third party. We may, however, use certain information about you that is not personally identifiable.

We use public information collected to determine the kinds of content that you would like to view and to assist any advertisers in targeting their advertising.

We also use your name, email address and other information on our system to notify you of new product releases, service notifications, and to solicit your feedback and input. Those emails will contain links for preference management and where appropriate, unsubscribe links should you decide you do not want to receive further emails.

You understand and agree that we may access, preserve, and disclose any information we may have about you and the contents of your account if required to do so by law or in a good faith belief that such access, preservation or disclosure is reasonably necessary to avoid liability, to comply with legal process, such as a search warrant, subpoena, statute, or court order, or to protect our rights and properly, or that of our affiliates or the public. Zynga is not required to question or contest the validity of any search warrant, subpoena or other similar governmental request that Zynga receives.

Zynga may maintain copies of your Content indefinitely, or delete certain Content in whole or in part if Zynga determines, in its sole discretion, that such Content constitutes an "Infringing Posting" or a "Prohibited Posting" as defined in our Terms of Use or for any or no reason.

We also use non-Personally Identifiable Information and certain technical information about your computer and your access of the Service (including your internet protocol address) in order to operate, maintain and manage the Service.

Zynga may disclose information about you to its partners in order to provide the Service, resolve service problems and correct errors in the Service, to communicate with you about the Service, to provide you with advertising and promotional information in connection with the Service, and to enhance your experience on the Service. However, we do not give our partners an independent right to share this information.

Due to our contractual obligations with these third parties and the need to share information to deliver and support the Service, we cannot provide you with the opportunity to opt-out of sharing information (whether Personally Identifiable Information or other information) with these third parties.

Zynga, certain of its partners, and each of their contractors and employees may view the Content that you transmit to the service to provide the Service and otherwise perform the tasks set forth in this Privacy Policy.

## Controlling Your Personal Information

Be advised that if you send messages or post material containing personal information, that information may be collected and used by others.

You can terminate your account at any time which will remove your profile and other personal information from view. Zynga, however, may (but is not obligated to) keep information about you that is on its system following your termination. Please contact Zynga to terminate your account or for any other questions about your personal information.

## Transfer of Information

We reserve the right to transfer your personal information in the event of a transfer of ownership of Zynga or the acquisition of substantially all the assets of Zynga related to the business which collected such information, such as acquisition by or merger with another company. In such an event, Zynga will notify users who have provided email addresses when information about those users is transferred and becomes subject to a different privacy policy

## Others' Information

You may decide to provide us with another person's email address so that person may be invited to join Zynga or so that we may facilitate your communication with other people through the Service (such as when you upload an address book)

You may also provide us with another person's contact information for purposes of delivering information through SNS Apps. We use this information to contact and, if necessary, remind that person that he or she has been invited to join Zynga or received content through an SNS App. All invitees are provided with the option not to receive further invitations from Zynga. We may disclose such information if required to do so in order to comply with legal process, as described above.

## Cookies

The Service sends "cookies" to your computer when you access the Zynga site, or otherwise view content through a Zynga game, or use an SNS App and the Service uses such cookies as described in here. The Service uses cookies to improve the quality of our service, make recommendations, and make the Service easier to use for our users. A cookie is a small text file recorded on your hard drive that identifies you as a unique user and contains certain information about your particular login session and/or your use of the Service.

## Use of Information

Zynga may contain links to other web sites, and content in Zynga game and SNS Apps may be hosted by other web sites. In addition, as described above, most content offered through Zynga games or SNS Apps is served or hosted by other sites. These other sites maintain their own policies regarding cookies and the collection and use of personal information. It is up to you to review those policies yourself.

### Third-Party Advertising Companies

We use third-party advertising companies to serve ads on our site and on certain Zynga games and SNS Apps. Our system and the third-party advertising technology uses information derived from Activity Information. Zynga's cookies on your hard drive, your visits to our site, the Zynga games that you view and the SNS Apps you use to target advertising within our site or Zynga games or SNS Apps. In addition, our advertisers may use other third-party advertising technology to target advertising on our site and other sites. In the course of advertisements being served to you, a unique third-party cookie or cookies may be placed on your computer. Similarly, third-party advertising companies may provide us with pixel tags (also called "clear gifs" or "beacons") to help manage and optimize our online advertising. Beacons enable us to recognize a browser's cookie when a browser visits the site on which the beacon is located, and to learn which banner ads bring users to a given site.

Zynga does not provide any Personally Identifiable Information to third-party advertising companies. Note, however, that if an advertiser asks Zynga to show an advertisement to users with certain characteristics (for example, women ages 18-24) or a segment of that group (for example, women ages 18-24 who have viewed certain categories of content) and you respond to that advertisement, the third-party advertising company may conclude that you have the characteristics of the audience that they are trying to reach.

### Security

Zynga takes appropriate precautions to protect our users' information. Your account information is located on a secured server behind a firewall. When you enter sensitive information (such as credit card number or your password), we encrypt that information using secure socket layer technology (SSL). (To learn more about SSL, go to http://en.wikipedia.org/wiki/Secure_Sockets_Layer). Because email and instant messaging are not recognized as secure communications, we request that you not send private information to us by email or instant messaging services. If you have any questions about the security of Zynga Web Site, please contact us at privacy@zynga.com

### Additional Questions

Again, feel free to contact us by sending an email to privacy@zynga.com , any time, if you have further questions about Zynga or this Privacy Policy, or if you want to receive a previous version of this document.

### California Residents: Your California Privacy Rights

Under California law, California Residents who have an established business relationship with Zynga or one of its subsidiaries may choose to opt out of Zynga disclosure of personal information about them to third parties for direct marketing purposes. As detailed above, our policy is not to disclose personal information collected online to a third party for direct marketing purposes without your approval. If you choose to opt-out at any time after granting approval, email privacy@zynga.com.

Copyright 2010 Zynga Game Network Inc. All rights reserved.                    Home  Privacy Policy  Terms of Service  Press  Zynga.org  Blog  Site Map  Support  Contact Us